UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID DeGRAPHENREED,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS LLC,<br><br>　　　　Defendant. | Case No. 3:24-cv-00283<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:　　The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil action arises out of a written agreement for the purchase and provision of residential internet services between pro se Plaintiff David DeGraphenreed and Defendant Comcast Cable Communications, LLC (Comcast). (Doc. No. 7.) DeGraphenreed alleges consumer protection and common law claims against Comcast related to a data breach that Comcast announced in December 2023. (Doc. No. 7.) Comcast has filed a motion to compel arbitration and dismiss this action under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (Doc. No. 9.) DeGraphenreed filed a response in opposition (Doc. No. 16), and Comcast filed a reply (Doc. No. 18). For the reasons that follow, the Magistrate Judge will recommend that the Court grant Comcast's motion to compel arbitration and dismiss.

I.　　Background

　　A.　　Factual Background

Comcast owns and operates Xfinity, a telecommunications company that provides residential internet services, among other things. (Doc. Nos. 7, 11.) DeGraphenreed opened an

account for Xfinity residential internet service on January 15, 2022. (Doc. Nos. 7, 11.) During the online sign-up process, DeGraphenreed clicked a checkbox indicating that he agreed to Xfinity's Customer Agreement for Residential Services (the Services Agreement):



(Doc. No. 10-1, PageID# 94.)

The first three paragraphs of the Services Agreement state:

The terms of this agreement (the **"Agreement"**) apply to your use of any of the Xfinity services described in Section 1 below and the Xfinity Equipment described in Section 7 below (collectively, the **"Services"**). An operating subsidiary or other affiliate of Comcast Cable Communications, LLC (collectively, **"Comcast," "we," "us,"** or **"our"**) provides the Services.

You accept this Agreement and agree to its terms by activating the Services, using the Services, continuing to use the Services after we provide notice of a change to this Agreement, or otherwise indicating your acceptance of the Services. You may not modify this Agreement by making any typed, handwritten, or other changes.

**Note: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICES. UNLESS YOU HAVE OPTED OUT IN A TIMELY MANNER, THE ARBITRATION PROVISION REQUIRES THAT ALL DISPUTES BE RESOLVED IN INDIVIDUAL ARBITRATIONS OR SMALL CLAIMS COURT PROCEEDINGS. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.**

(Doc. No. 10-2, PageID# 97.)

The referenced arbitration provision states:

**13. BINDING ARBITRATION, AND CLASS/COLLECTIVE/ REPRESENTATIVE ACTION/RELIEF WAIVER**

Any Dispute involving you and us shall be resolved through individual arbitration as described in this Section 13 (the **"Arbitration Provision"**). In arbitration, there is no judge or jury, and there is less discovery and appellate review than in court.

a. **Definitions**

This Arbitration Provision shall be interpreted broadly. **"Dispute"** means any and all claims or controversies related to us or our relationship, including, but not limited to, any and all: (1) claims for relief and theories of liability, whether based in contract, tort, fraud, negligence, statute, regulation, ordinance, or otherwise; (2) claims or controversies that arose before this Agreement or any prior agreement; (3) claims or controversies that arise after the expiration or termination of this Agreement; and (4) claims or controversies that are the subject of purported class, collective, or representative action litigation. As used in this Arbitration Provision, **"us"** and **"we"** means Comcast Cable Communications, LLC and any of its parents, subsidiaries, and other affiliates, each of their respective predecessors, successors, and assigns, and each of their respective officers, directors, employees, and agents; and "you" means you and any users or beneficiaries of the Services.

b. **Exclusions**

NOTWITHSTANDING THE FOREGOING, THE FOLLOWING DISPUTES WILL NOT BE SUBJECT TO ARBITRATION: (i) DISPUTES RELATING TO THE SCOPE, VALIDITY, OR ENFORCEABILITY OF THIS ARBITRATION PROVISION; (ii) DISPUTES THAT ARISE BETWEEN US AND ANY STATE OR LOCAL REGULATORY AUTHORITY OR AGENCY THAT IS EMPOWERED BY FEDERAL, STATE, OR LOCAL LAW TO GRANT A FRANCHISE UNDER 47 U.S.C. § 522(9); AND (iii) DISPUTES THAT CAN ONLY BE BROUGHT BEFORE THE LOCAL FRANCHISE AUTHORITY UNDER THE TERMS OF THE FRANCHISE.

c. **Right to Opt Out**

IF YOU DO NOT WISH TO ARBITRATE DISPUTES, YOU MAY DECLINE TO HAVE YOUR DISPUTES WITH US ARBITRATED BY NOTIFYING US, WITHIN 30 DAYS OF YOUR FIRST SERVICE ACTIVATION, (i) BY VISITING WWW.XFINITY.COM/ARBITRATIONOPTOUT, OR (ii) IN WRITING BY MAIL TO: COMCAST, 1701 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA 19103-2838, ATTN: LEGAL DEPARTMENT/ARBITRATION. ANY SUCH WRITTEN NOTIFICATION TO US MUST INCLUDE YOUR NAME, SERVICE ADDRESS, AND COMCAST ACCOUNT NUMBER, AND A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH US THROUGH ARBITRATION. YOUR DECISION TO OPT

OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH US OR THE SERVICES PROVIDED BY US. IF YOU HAVE PREVIOUSLY OPTED OUT OF ARBITRATION WITH RESPECT TO THE ACCOUNT GOVERNED BY THIS AGREEMENT, YOU DO NOT NEED TO DO SO AGAIN. BUT YOU MUST SEPARATELY OPT OUT FOR EACH ACCOUNT UNDER WHICH YOU RECEIVE SERVICES. ANY OPT-OUTS SUBMITTED AFTER THIS 30-DAY PERIOD WILL NOT BE EFFECTIVE AND ALL DISPUTES WITH US WILL BE ARBITRATED.

d. **Initiation of Arbitration Proceeding/Selection of Arbitrator**

Either you or we may initiate an arbitration proceeding by opening a case with the American Arbitration Association (**"AAA"**) by visiting its website (www.adr.org) or calling its toll free number (1-800-778-7879). You may deliver any required or desired notice to us by mail to: Comcast, 1701 John F. Kennedy Boulevard, Philadelphia, PA 19103-2838 – ATTN: LEGAL DEPARTMENT/ARBITRATION.

e. **Right to Sue in Small Claims Court**

Notwithstanding anything in this Arbitration Provision to the contrary, either you or we may elect to have a Dispute heard in a small claims court in the area where you receive(d) Services from us, if the claim(s) underlying the Dispute is not aggregated with the claim(s) of any other person and if the amount in controversy is properly within the jurisdiction of the small claims court.

f. **Arbitration Procedures**

Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act. Arbitrations shall be administered by the AAA pursuant to the most recent version of its Consumer Arbitration Rules (the **"AAA Rules"**) as modified by the version of this Arbitration Provision that is in effect when you notify us about your Dispute. You can obtain the AAA Rules from the AAA by visiting its website (www.adr.org) or calling its toll-free number (1-800-778-7879). If there is a conflict between this Arbitration Provision and the rest of this Agreement, this Arbitration Provision shall govern. If there is a conflict between this Arbitration Provision and the AAA Rules, this Arbitration Provision shall govern. If the AAA will not administer a proceeding under this Arbitration Provision as written, you and we shall agree on a substitute arbitration organization. If you and we cannot agree, you and we shall mutually petition a court of appropriate jurisdiction to appoint an arbitration organization that will administer a proceeding under this Arbitration Provision, as written, applying the AAA Rules. A single arbitrator will resolve the Dispute. Unless you and we agree otherwise, any arbitration hearing will take place at a location convenient to you in the area where you receive Services from us. If you no longer receive Services from us when you notify us of your Dispute, then any arbitration hearing will take place at a location convenient to you in the county where you reside when you notify us of your Dispute, provided that we offer Services in that county, or in the area where you

4

received Services from us at the time of the events giving rise to your Dispute. The arbitrator will honor claims of privilege recognized by law and will take reasonable steps to protect customer account information and other confidential or proprietary information. The arbitrator shall issue a reasoned written decision that explains the arbitrator's essential findings and conclusions. The arbitrator's award may be entered in any court having jurisdiction over the parties only if necessary for purposes of enforcing the arbitrator's award. An arbitrator's award that has been fully satisfied shall not be entered in any court.

g. **Waiver of Class, Collective, and Representative Actions/Relief**
THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED (I) ON A CLASS ACTION, COLLECTIVE ACTION, OR OTHER JOINT OR CONSOLIDATED BASIS, OR (II) ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS. THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT INDIVIDUAL PARTY'S CLAIM, AND THE ARBITRATOR MAY NOT AWARD RELIEF FOR OR AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A PARTY. THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A CLASS, COLLECTIVE, OTHER JOINT OR CONSOLIDATED, OR REPRESENTATIVE PROCEEDING. THIS WAIVER OF CLASS, COLLECTIVE, OTHER JOINT OR CONSOLIDATED, OR REPRESENTATIVE ACTIONS AND RELIEF IS AN ESSENTIAL PART OF THIS ARBITRATION PROVISION AND CANNOT BE SEVERED FROM IT. THE REMAINING PORTIONS OF THIS ARBITRATION PROVISION ARE NOT ESSENTIAL PARTS OF THIS ARBITRATION PROVISION AND CAN BE SEVERED FROM IT BY A COURT OF COMPETENT JURISDICTION.

h. **Arbitral Fees and Costs**
If your claim seeks more than $75,000 in the aggregate, the payment of the AAA's fees and costs will be governed by the AAA Rules. If your claims seek less than $75,000 in the aggregate, the payment of the AAA's fees and costs will be our responsibility. However, if the arbitrator finds that your Dispute was frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), the payment of the AAA's fees and costs shall be governed by the AAA Rules, and you shall reimburse us for all fees and costs that were your obligation to pay under the AAA Rules. You may hire an attorney to represent you in arbitration. You are responsible for your attorneys' fees and additional costs. You may only recover your attorneys' fees and costs in the arbitration

> if the arbitration is decided in your favor and to the extent that you could have recovered those fees in court in accordance with the law or statute(s) that apply to the case. Notwithstanding anything in this Arbitration Provision to the contrary, we will pay all fees and costs that we are required by law to pay.
>    i. **Survival**
>       This Arbitration Provision shall survive the termination of your Services with us.

(*Id.* at PageID# 105–06, ¶¶ 13(a)–(i).)

On the day DeGraphenreed opened his account, Comcast emailed him an electronic "new subscriber[ ]" "Welcome Kit" that included a link to the Services Agreement. (Doc. No. 11, PageID# 110, ¶¶ 7, 8.) "The service was installed" at DeGraphenreed's residential address in Nashville, Tennessee, sometime "in February 2022." (*Id.* at ¶ 5.) Comcast continued to provide DeGraphenreed internet service, and DeGraphenreed paid for that service, until March 2024. (Doc. No. 11.) Comcast states, and DeGraphenreed does not dispute, that "DeGraphenreed never notified Comcast that he wished to opt out of arbitration." (*Id.* at PageID# 111, ¶ 12.)

On December 28, 2023, DeGraphenreed received an email from Comcast "notifying [him] of a recent data security incident involving [his] personal information." (Doc. No. 16, PageID# 146.) The email stated that, "[o]n October 10, 2023, one of Xfinity's software providers, Citrix, announced a vulnerability in one of its products used by Xfinity and thousands of other companies worldwide." (*Id.*) Comcast stated that it "promptly patched and mitigated [its] systems" but "subsequently discovered that prior to mitigation, between October 16 and October 19, 2023, there was unauthorized access to some of [Xfinity's] internal systems that [Comcast] concluded was a result of this vulnerability." (*Id.*) Comcast determined that customer "information was likely acquired" via this unauthorized access, including "usernames and hashed passwords" and, "for some customers, other information was also included, such as names, contact information, last four digits of social security numbers, dates of birth and/or secret questions and answers." (*Id.* at

PageID# 146–47.) Comcast stated that its "data analysis" regarding the security incident was "continuing" and it would "provide additional notices as appropriate." (*Id.* at PageID# 147.)

On January 12, 2024, DeGraphenreed "submitted a notice of [ ] dispute to Comcast . . . asserting several state statutory and common law claims relating to the cyberattack . . . ." (Doc. No. 10, PageID# 79.) Apparently referencing the use of the term "dispute" in the Services Agreement's arbitration provision, Comcast characterizes DeGraphenreed's communication as "an apparent acknowledgment of Comcast's Arbitration Provision[.]" (*Id.*) DeGraphenreed characterizes the notice differently as a "pre-suit notice" informing Comcast that he had drafted "[a] twenty-three page civil lawsuit demanding a jury trial" asserting consumer protection and common law claims and providing Comcast "an opportunity to cure" his asserted injuries before he filed the lawsuit "in the United States District Court for the Middle District of [Tennessee][.]" (Doc. No. 16, PageID# 143, 158.) DeGraphenreed states that he did not receive a response from Comcast until March 12, 2024, one day after DeGraphenreed filed his complaint in this action. (Doc. No. 16.) In a subsequent email to DeGraphenreed, Comcast's counsel stated that, after it issued the December 28, 2023 email notice of the data breach, "Comcast ha[d] carefully reviewed [DeGraphenreed's] claim and concluded that [his] personal data was not compromised in connection with the Citrix data incident." (*Id.* at PageID# 145.) DeGraphenreed states that he "has evidence of his [personal identifying information] being on the Dark Web in approximation to the time of the Oct[ober] 2023 data breach . . . ." (Doc. No. 16, PageID# 151.)

### B.     Procedural History

DeGraphenreed initiated this action on March 11, 2024, by filing a complaint against Comcast. (Doc. No. 1.) DeGraphenreed also filed an application for leave to proceed *in forma pauperis* (IFP). (Doc. No. 2.) After correcting DeGraphenreed's use of an incorrect IFP application form (Doc. No. 6), the Court granted DeGraphenreed's amended IFP application and screened his

7

complaint under 28 U.S.C. § 1915(e)(2)(B), finding that DeGraphenreed asserts "multiple state consumer-protection violations" against Comcast and that "this case is not subject to dismissal but will proceed for further development." (Doc. No. 14, PageID# 135, 136.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 626(b)(1)(A) and (B). (Doc. No. 14.)

On May 14, 2024, Comcast filed a motion to compel arbitration under the FAA, dismiss DeGraphenreed's claims pending arbitration, and stay discovery pending the Court's resolution of Comcast's motion. (Doc. No. 9.) Comcast supported its motion with a memorandum of law (Doc. No. 10), a sworn declaration by Comcast Senior Director for Customer Service Strategy and Operations Colin M. Padgett (Doc. No. 11), and exhibits including copies of the Services Agreement (Doc. Nos. 10-1, 10-2, 11-1, 11-2).

On June 17, 2024, the Court found that DeGraphenreed had not responded in opposition to Comcast's motion within the time period provided by this Court's Local Rules and the Federal Rules of Civil Procedure. (Doc. No. 15.) The Court therefore ordered DeGraphenreed to show cause by July 1, 2024, why the Magistrate Judge should not recommend that the Court dismiss his complaint under Federal Rule of Civil Procedure 41(b) for DeGraphenreed's failure to prosecute his claims or for the reasons stated in Comcast's motion and to show cause why the Court should permit him to file an untimely response in opposition to Comcast's motion to compel arbitration and dismiss. (*Id.*) The Court further ordered DeGraphenreed to file any response in opposition to Comcast's motion with his show-cause response. (*Id.*)

On July 1, 2024, DeGraphenreed filed an "Opposition to Arbitrate and Contest the Enforceability of the Defendants Agreements[.]" (Doc. No. 16, PageID# 140.) The Court construed this filing as DeGraphenreed's response in opposition to Comcast's motion and found

it to be "an adequate response to the show-cause order." (Doc. No. 17.) Comcast filed a reply in support of its motion on July 8, 2024. (Doc. No. 18.)

## II. Legal Standard

The FAA provides that written agreements to arbitrate disputes arising out of commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. This provision reflects "a 'liberal federal policy favoring arbitration[.]'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). However, arbitration remains "'a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

Under the FAA, anyone aggrieved by another's alleged failure or refusal to arbitrate pursuant to a written arbitration agreement may petition a federal district court for an order directing the parties to proceed to arbitration in accordance with the agreement. 9 U.S.C. § 4. The overarching question for a court in resolving a motion to compel arbitration is "whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks:"

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* In making these determinations, courts must "examine the language of the contract in light of the strong federal policy in favor of arbitration" and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* Courts evaluating motions to compel arbitration "'treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party.'" *Green v. Mission Health Communities, LLC*, No. 3:20-cv-00439, 2020 WL 6702866, at *4 (M.D. Tenn. Nov. 13, 2020) (Trauger, J.) (quoting *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014)).

Where, as here, a party challenges the validity of an arbitration agreement, the FAA instructs courts to apply state contract law to determine validity and enforceability. 9 U.S.C. § 2; *see also Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1271 (M.D. Tenn. 2020) (citing *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). "Thus, generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Courts distinguish between challenges to the validity of a contract as a whole, which are "matter[s] to be resolved by the arbitrators, not the federal courts[,]" and challenges to the validity of an arbitration agreement, which "federal court[s] may adjudicate . . . ." *Glazer v. Lehman Bros.*, 394 F.3d 444, 452 (6th Cir. 2005) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967)); *see also Fazio v. Lehman Bros.*, 340 F.3d 386, 393 (6th Cir. 2003) (same). If the "court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting 9 U.S.C. § 4). To place "the validity of the agreement

[ ] 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit."[1] *Id.* (citation omitted).

III.     Analysis

DeGraphenreed makes two arguments in opposition to Comcast's motion to compel arbitration and dismiss. (Doc. No. 16.) His first argument is that the Services Agreement "is wholly unenforceable" because Comcast breached the Services Agreement by engaging in "deceptive or unfair practices" including "falsely advertising its security surrounding their customers['] [personal identifying information]." (Doc. No. 16, PageID# 142, 152.) The Sixth Circuit has repeatedly held that, "when claims [in opposition to a motion to compel arbitration] involve 'the validity of the contract as a whole' and not just the arbitration agreement, '[s]uch claims are to be brought before the arbitrator, not the district court in deciding a petition to compel arbitration.'"

---

[1]     In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

*Fazio*, 340 F.3d at 395; *see also Glazer*, 394 F.3d at 452. Thus, DeGraphenreed's argument that the Services Agreement is unenforceable as a whole is properly resolved by an arbitrator and not by this Court.

DeGraphenreed's second argument is that the Services Agreement's arbitration provision is unenforceable because it is unconscionable. (Doc. No. 16.) Under Tennessee law, "'[u]nconscionability may arise from a lack of meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability).'" *Cooper*, 367 F.3d at 503 (quoting *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001), *abrogated on other grounds*, *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102 (Tenn. 2016)). Courts applying Tennessee law "'have tended to lump the two together . . .'" *id.* (quoting *Trinity Indus., Inc.*, 77 S.W.3d at 171), applying the rule that a contract provision is unconscionable where "the 'inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.'" *Seawright*, 507 F.3d at 977 (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)); *see also Pugh v. Lady Jane's Haircuts for Men Holding Co.*, 660 F. Supp. 3d 712, 727 (M.D. Tenn. 2023) (Trauger, J.) (quoting *Haun*, 690 S.W.2d at 872).

DeGraphenreed argues that the arbitration provision is unconscionable for three reasons. (Doc. No. 16.) First, he argues that the fact "there is less discovery" in arbitration than in litigation "is not [ ] equitable . . . for [him]" because, in this case, the "limitation of discovery hinders certain aspects of proving the severity of negligence from the actions by [Comcast]" before and after "the 2023 data breach." (*Id.* at PageID# 141.) He argues "that arbitration should be an equally fair and balanced alternative to litigation, not an agreement that is exclusive in its favor to the company."

(*Id.*) But, as Comcast points out (Doc. No. 18), this limitation on discovery "is equitable in that it binds both" DeGraphenreed and Comcast. *Seawright*, 507 F.3d at 977. "Generally, courts analyzing substantive unconscionability of arbitration agreements under Tennessee law focus on mutuality." *Roberts v. Boyd Sports, LLC*, 712 F. Supp. 3d 1062, 1069 (E.D. Tenn. 2024) (citing *Seawright*, 507 F.3d at 977). Where, as here, "the arbitration agreement equally binds both Plaintiff[ ] and Defendant, a lack of mutuality cannot be shown." *Id.* at 1069–70.

Next, DeGraphenreed argues that the arbitration provision is unenforceable because it was "buried in the legalese of the [A]greement . . . ." (Doc. No. 16, PageID# 141.) But the copy of the Services Agreement that Comcast filed in support of its motion shows that the Services Agreement states in its third paragraph in conspicuous bold and capitalized text that it includes an arbitration provision, that "there is no judge or jury and there is less discovery and appellate review [in arbitration] than in court[,]" and that the arbitration provision will affect the consumer's rights "unless you have opted out in a timely manner[.]" (Doc. No. 11-2, PageID# 118.) Viewed against the Services Agreement's uncontested format and terms, DeGraphenreed's conclusory argument that the provision is "buried in legalese" does not create a genuine dispute of material fact that the arbitration provision is unconscionable.

Third, DeGraphenreed argues that the arbitration provision in unconscionable because it was not "specifically shown to [him] during" the sign-up process. (Doc. No. 16, PageID# 141.) DeGraphenreed's argument draws upon distinctions among the ways in which consumers enter into contracts with service providers online. "[A] clickwrap agreement is an agreement as to which a website user must manifest assent to the terms of the agreement by clicking on an icon." *Anderson*, 490 F. Supp. 3d at 1274 (collecting authority). By contrast, "[a] browsewrap agreement does not require the user to manifest assent to the contract; it instead provides notice to the user of

the agreement through a hyperlink posted somewhere on the website." *Id.* at 1274. "Some courts . . . categoriz[e] agreements that require a separate link be clicked as hybrid clickwrap/browsewrap agreements . . . ." *Id.* at 1275. "[R]egardless of the label, these agreements are [ ] routinely upheld" and found to be enforceable. *Id*.

DeGraphenreed argues that "clickwrap" agreements generally "should be consider[ed] a contract signed under duress" because they "are one sided and do not offer an equitable alternative if the consumer wishes to opt out of any . . . provisions of the agreement[.]" (Doc. No. 16, PageID# 153.) But DeGraphenreed offers no authority to contradict the "routine[ ]" enforcement of such agreements. *Anderson*, 490 F. Supp. 3d at 1275. And Comcast has submitted evidence (Doc. No. 11-1) to show that a hyperlink to the Services Agreement "was prominently displayed" under a checkbox that DeGraphenreed "was required to" click to complete his purchase. *Id.* Comcast has also stated, and DeGraphenreed has not disputed, that it emailed him a separate link to the Services Agreement on the day he signed up for residential internet service. (Doc. No. 11.) Consequently, DeGraphenreed also has not met his burden to show that the Services Agreement's arbitration clause is unconscionable for this reason.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Comcast's motion to compel arbitration and dismiss (Doc. No. 9) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of January, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge